IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| WENDELL TERRY LOCKE,<br><br>    Petitioner,<br><br>v.<br><br>KATHI VIDAL, Performing the Functions and Duties of the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,<br><br>    Respondent. | Civil Action No. 1:23-cv-1288 |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on the Motion for Summary Judgment submitted by Respondent Kathi Vidal, Under Secretary of Intellectual Property and Director of the United States Patent and Trademark Office ("USPTO Director").

Petitioner Wendell Terry Locke, an attorney, is a member of the Florida Bar and registered to practice before the USPTO. In recent years, both bodies disciplined Locke: on March 1, 2022, the Supreme Court of Florida suspended Locke from practicing law in Florida for one year, and on August 24, 2023, the USPTO Director imposed reciprocal discipline, suspending Locke from practice before the USPTO for one year. Locke's present petition for review challenges the USPTO's imposition of reciprocal discipline.

On November 12, 2019, the Florida Bar commenced disciplinary proceedings against Locke, see The Florida Bar v. Locke, No. SC2019-1913 (Fla. commenced Nov. 12, 2019), stemming from Locke's conduct in Bussey-Morice v. Kennedy,

1

No. 6:11-cv-970 (M.D. Fla. filed Jun. 10, 2011). The Supreme Court of Florida ordered a referee appointed for those proceedings, who presided over the final hearing from December 7–9, 2020, and the sanctions hearing on March 1, 2021. Here, Locke protests that he was unable to compel production of certain exhibits or testimony during the final hearing, but Locke admittedly appeared and testified on his own behalf and introduced more than one hundred exhibits into evidence. The Referee issued his report on March 17, 2021. After cataloguing Locke's misconduct in <u>Bussey-Morice</u>, the Referee found that Locke made statements "with reckless disregard as to their truth or falsity concerning the integrity of the court," among other infractions. In sum, the Referee found Locke guilty of violating eight of Florida's rules of professional responsibility and recommended a ninety-day suspension.[1]

Both the Florida Bar and Locke sought review of the Referee's report before the Supreme Court of Florida. Locke argued that the Referee "unfavorably prejudged certain material issues" in the disciplinary proceeding, thereby denying his access to a fair and impartial tribunal. And further, Locke argued his inability to "call his own witnesses of choice" or "introduce certain favorable documentary evidence" denied his due process right to defend himself. The Florida Bar, meanwhile, did not seek review of the Referee's recommendations concerning guilt but sought the imposition of a one-year suspension, rather than the Referee's ninety-day recommendation. On March 1, 2022, the court approved the Referee's findings of fact and recommendations as to guilt but

---

[1] The Referee found Locke guilty of violating the following Rules Regulating the Florida Bar: (1) Rule 3-4.3 (Misconduct and minor misconduct); (2) Rule 4-1.7 (Conflict of Interest; Current Clients); (3) Rule 4-3.1 (Meritorious Claims and Contentions); (4) Rule 4-3.2 (Expediting Litigation); (5) Rule 4-3.4(c) (Fairness to opposing Party and Counsel); (6) Rule 4-3.S(c) (Impartiality & Decorum of the Tribunal); (7) Rule 4-8.2(a) (Impugning the integrity of judicial official); and (8) Rule 4-8.4(d) (Misconduct).

2

disapproved the Referee's recommended discipline. Contrary to the Referee's conclusions, the court found that the record supported two aggravating factors in imposing sanctions and suspended Locke from the practice of law for one year.

Locke notified the USPTO of his Florida suspension, and on March 23, 2023, the Director of the Office of Enrollment and Discipline for the USPTO ("OED Director") filed a Complaint for Reciprocal Discipline. Pursuant to 37 C.F.R. § 11.24 and predicated on Locke's Florida suspension, the Complaint asked the USPTO Director to reciprocally suspend Locke from practice before the USPTO for one year. Locke challenged the imposition of reciprocal discipline, pleading a series of alternative arguments. First, Locke argued the USPTO Director could not base reciprocal discipline on his Florida suspension because the Florida disciplinary proceedings denied him his due process and equal protection rights. Second, if Locke's Florida suspension warranted reciprocal discipline, Locke argued his USPTO suspension should run concurrently, or *nunc pro tunc*, with his Florida suspension (which ran from March 31, 2022, to March 30, 2023). And third, if the USPTO Director suspended Locke, Locke argued that any published notice of his suspension in the USPTO's *Official Gazette* should be materially consistent with the Florida Bar's notice regarding Locke's Florida suspension.

On August 24, 2023, the USPTO Director suspended Locke from practice before the USPTO for one year, turning to each of Locke's arguments in turn. First, the USPTO Director found that Locke's claimed defects in the Florida proceedings did not amount to a deprivation of due process under § 11.24(d)(1)(i). Per the regulation, disciplinary due process requires only notice and opportunity to be heard, and the

Florida proceedings afforded Locke both. Second, the USPTO Director found Locke ineligible for discipline *nunc pro tunc* for failing to satisfy § 11.24(f)'s requirements. The regulation requires practitioners to establish by clear and convincing evidence their compliance with § 11.58 before the USPTO Director may impose discipline *nunc pro tunc*. Noting Locke failed to allege, let alone prove, that he complied with § 11.58, the USPTO Director concluded she lacked even the discretion to impose discipline *nunc pro tunc*. And third, regarding Locke's request that the USPTO's disciplinary notice match Florida's, the USPTO Director found that Locke cited no authority to support this request and directed the OED Director to publish a separate notice.

The Court reviews petitions from practitioners suspended or excluded from practice before the USPTO. See 35 U.S.C. § 32. Under the Administrative Procedure Act, the USPTO Director's choice of sanction is unlawful "only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Bender v. Dudas, 490 F.3d 1361, 1365–66 (Fed. Cir. 2007) (quoting 5 U.S.C. § 706). This standard is highly deferential, "with a presumption in favor of finding the agency action valid." Ohio Valley Env't Coal. v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009). In APA actions, summary judgment is often appropriate because "the administrative record provides the complete factual predicate for the court's review." Navient Sols., LLC v. Dep't of Educ., 646 F. Supp. 3d 705, 710 (E.D. Va. 2022). The Court decides, as a matter of law, whether the record reveals a rational basis for the USPTO Director's decision. See Manufactured Hous. Inst. v. U.S. Env't Prot. Agency, 467 F.3d 391, 398 (4th Cir. 2006).

Here, the record provided a rational basis for USPTO Director's decision. First, no defect in the Florida disciplinary proceedings amounted to a deprivation of due process. Second, the USPTO Director could not impose discipline *nunc pro tunc* because Locke failed to prove his compliance with 37 C.F.R. §§ 11.24(f) and 11.58. And third, nothing entitled Locke to dictate the terms of the USPTO's disciplinary notice.

First, due process in disciplinary proceedings "requires notice and an opportunity to be heard." Haley v. Under Sec'y of Com. for Intell. Prop., 129 F. Supp. 3d 377, 386 (E.D. Va. 2015); 37 C.F.R. § 11.24(d)(1)(i). The Florida disciplinary proceedings afforded Locke both. In Chaganti v. Matal, the Missouri Supreme Court indefinitely suspended Chaganti from practice in Missouri, and the USPTO Director—then, Matal—imposed reciprocal discipline. 695 F. App'x 545, 546 (Fed. Cir. 2017). Chaganti appealed, arguing that the Missouri disciplinary proceedings denied him due process. Id. at 549. Setting out the standard, the court wrote that "due process requirements are met where a practitioner attended and participated actively in the various hearings, and was afforded an opportunity to present evidence, to testify, to cross-examine witnesses, and to present argument." Id. (quoting In re Squire, 617 F.3d 461, 467 (6th Cir. 2010)) (cleaned up). To the court, "[t]hese requirements plainly were met in this case": Chaganti engaged in discovery, testified at a hearing, and cross-examined two individuals who testified against him. Id. It is equally plain that the Florida proceedings afforded Locke due process. Locke attended and participated actively in the proceedings, introduced exhibits into evidence, and testified on his own behalf. Locke complains he was unable to introduce additional evidence—namely, subpoenaing the testimony of a federal judge—but due process in a disciplinary

proceeding does not entitle Locke to such a presentation. See In re Sibley, 564 F.3d 1335, 1340–41 (D.C. Cir. 2009) (holding that due process did not entitle a defendant in a disciplinary proceeding "to call specific witnesses in his defense").

Additionally, Locke's other due process argument—that the Referee prejudged his disciplinary case—is equally unavailing. Prior to presiding over Locke's Florida disciplinary proceedings, the Referee also presided over disciplinary proceedings against Locke's co-counsel in Bussey-Morice, Patterson. See The Florida Bar v. Patterson, No. SC2019-2070 (Fla. commenced Dec. 12, 2019). The Referee published his report in Patterson on November 10, 2020, and there addressed some of Locke's misconduct alongside his co-counsel. See id., Report of Referee (Fla. filed Nov. 10, 2020). Locke argues that by reporting instances of Locke's misconduct in the Patterson report before presiding over Locke's final hearing from December 7–9, 2020, the Referee prejudged Locke's case. This argument fails on two fronts. First, Locke alleges this prejudgment deprived him of due process; however, as described above, due process in a disciplinary proceeding requires only notice and an opportunity to be heard. Second, the Referee's report in Patterson does not evidence prejudgment. The Referee's judgment in one case can "almost never constitute a basis" for finding his bias in another case. Liteky v. United States, 510 U.S. 540, 541 (1994). To do so, the prior proceedings must "display a deep-seated favoritism or antagonism that would make fair judgment impossible" in the subsequent proceedings. Id. Nothing about the Patterson proceedings approaches this standard.

Next, the USPTO Director's denial of discipline *nunc pro tunc* was lawful. Under 37 C.F.R. § 11.24(f), reciprocal discipline *may* be imposed *nunc pro tunc* only if the

6

practitioner promptly notifies the OED Director of his discipline in another jurisdiction and establishes by clear and convincing evidence that he voluntarily ceased practice before the USPTO and complied with all provisions of § 11.58. This regulation poses two hurdles to practitioners seeking discipline *nunc pro tunc*. First, before imposing discipline *nunc pro tunc*, the USPTO Director must find that the practitioner complied with the requirements set out in §§ 11.24(f) and 11.58. And second, after finding that compliance, the USPTO Director retains the discretion to grant or deny discipline *nunc pro tunc* so long as their decision is neither arbitrary nor capricious: "the term 'may' in a statute or agency regulation dealing with agency power is generally construed as permissive," United Hosp. Ctr., Inc. v. Richardson, 757 F.2d 1445, 1453 (4th Cir. 1985), and nothing about § 11.24(f) belies that interpretation. Locke fails to clear the first hurdle and never addresses the second.

The record here provides a rational basis for the USPTO Director's finding that Locke failed to comply with §§ 11.24(f) and 11.58. Section 11.58(c)(5), for example, requires the practitioner to serve the notices required by § 11.58(c)(2)–(4) by certified mail, unless the intended recipient is located outside the United States. In conjunction, § 11.24(f) requires the practitioner to prove their compliance with § 11.58(c)(5), like § 11.58's other requirements, by clear and convincing evidence. In his representations to the USPTO, Locke did not provide—and does not argue that he provided—any evidence of his compliance or attempted compliance with § 11.58(c)(5) or any of § 11.58's provisions. Locke argues that, in practice, he took the steps required by §§ 11.24(f) and 11.58, but by failing to provide evidence of those actions to the USPTO, Locke failed the first hurdle. Therefore, even if the USPTO Director was inclined to grant discipline

*nunc pro tunc*, she could not find Locke complied with §§ 11.24(f) and 11.58 without clear and convincing evidence. And without such a finding as to all §§ 11.24(f) and 11.58's requirements, the USPTO Director lacked even the discretion to grant discipline *nunc pro tunc*.

Lastly, the USPTO Director's disciplinary notice of Locke's suspension was lawful. Contrary to Locke's protests, the USPTO's notice was neither untrue nor inaccurate, and Locke provides no citation or support for his argument that the USPTO's notice should match that published by the Florida Bar. Tellingly, Locke abandoned this argument altogether in his Response Opposing the USPTO's Motion for Summary Judgment.

For the reasons stated above, the USPTO Director's Final Order entered on August 24, 2023, was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. An appropriate order shall issue.

Alexandria, Virginia
February 9, 2024

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE